IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

MURPHY COMPANY, an
Oregon Corporation; and MURPHY
TIMBER INVESTMENTS, LLC, an
Oregon limited liability company,

        Plaintiffs,

   v.

DONALD J. TRUMP, in his
official capacity as President
of the United States of America;
RYAN ZINKE, in his official
capacity as Secretary
of Interior; U.S. DEPARTMENT OF
INTERIOR; and U.S. BUREAU OF
LAND MANAGEMENT,

        Defendants,

SODA MOUNTAIN WILDERNESS
COUNCIL, KLAMATH-SISKIYOU
WILDLANDS CENTER, OREGON
WILD, and WILDERNESS SOCIETY,

        Intervenor-Defendants.

Case No. 1:17-cv-00285-CL

OPINION & ORDER

CLARKE, Magistrate Judge.

Plaintiffs and Federal Defendants move to continue the stay in this matter, originally issued in June 2017 and twice extended, in order to allow for Presidential action on the Secretary

Page 1 – OPINION & ORDER

of the Interior's review and recommendations of the Cascade-Siskiyou National Monument's designation under the 1906 Antiquities Act. Intervenor-Defendants object to the stay request. For the reasons below, the Court declines to continue the stay, and Plaintiffs' and Federal Defendants' motion (#29) is DENIED.

## BACKGROUND

Plaintiffs filed this action on February 17, 2017. Plaintiffs' action challenges Presidential Proclamation No. 9564, 82 Fed. Reg. 6,145 (Jan. 12, 2017). Proclamation No. 9564 expanded the boundaries of the Cascade-Siskiyou National Monument (the "Monument") by approximately 48,000 acres and was issued pursuant to then-President Barack Obama's authority under the Antiquities Act. Over 80 percent of the expanded acreage was, prior to the expansion, Oregon and California Lands ("O&C" Lands). Plaintiffs contend the Proclamation unlawfully changed its designation and accompanying statutory purpose from "permanent timber production to the park-like preservation status of a national monument." Compl., at 2, ¶ 2 [CM/ECF No. 1.]. Plaintiffs argue this designation violated the O&C Act and exceeded the scope of the President's authority under the Antiquities Act.

After this case was filed, President Donald J. Trump signed an executive order directing the Secretary of the Interior to review the designation of several national monuments, including the Cascade-Siskiyou National Monument. Consequently, on June 13, 2017, in order to provide the Secretary with the opportunity to complete the review process, the parties stipulated to stay these proceedings until thirty days after the Secretary presented his final report to the President. [CM/ECF No. 22.]. The Court granted this request and directed the parties to file a joint status report when the stay was slated to end.

On September 27, 2017, the parties submitted their first joint status report, and, in so doing, also requested that the Court continue the stay because the Secretary's recommendations, which endorsed reducing the size of the Monument, had been transferred to, and were being considered by, the President. First Joint Status Report [CM/ECF No. 25.]. "Because Presidential action based on the recommendations could ultimately affect the existing monument designation and its size in ways that could affect this litigation," First Joint Status Report, at 2, the Court continued the stay through November 27, 2017.

On November 28, 2017, the parties again sought to defer the proceedings because the Secretary's recommendations remained under the President's consideration. Second Joint Status Report [CM/ECF No. 27.]. The Court granted this request and stayed the case through January 31, 2018.

Finally, on February 2, 2018, the parties filed a third joint status report, again notifying the Court that the Secretary's recommendations were under consideration by the President but no Presidential action has been taken. Third Joint Status Report [CM/ECF No. 29.]. Because no Presidential action has been taken, Plaintiffs and Federal Defendants ask that the Court continue the stay through March 31, 2018, in order "to afford additional time for Presidential review and consideration of the Secretary of Interior's recommendations[.]" Third Joint Status Report, at 2.

Intervenor-Defendants oppose a further stay. First, they note that the stay has been lifted in two separate cases also challenging the Monument's expansion.[1] Thus, Intervenor-Defendants argue it would be most efficient for this case to proceed as well. Second, Intervenor-Defendants maintain that Plaintiffs and Federal Defendants "have not met their burden to justify a further stay of the litigation," and note that "[i]t has now been almost one year since [Plaintiffs] filed

---

[1] The stays were lifted in the two other cases because the parties agreed to a forty-five-day stay and that no further stay would be sought after the expiration of the forty-five-day period. That period has passed in both cases, and the stays have therefore been lifted.

[their] complaint in this case." Intervenor-Defs.' Mem. in Opp'n to Stay, at 1-2 [CM/ECF No. 31.].

By contrast, Plaintiffs and Federal Defendants argue that the Court should continue the stay, as doing so is in the Court's interest and would promote the orderly administration of justice. Specifically, they argue that staying this matter until the President acts on the Secretary's recommendations would promote the efficient allocation of judicial and party resources because the President's ultimate decision could moot the very issue Plaintiffs challenge in this action. Furthermore, Plaintiffs and Federal Defendants maintain that a further stay would not harm Intervenor-Defendants; indeed, they argue, "maintaining the status quo . . . is, after all, the fundamental goal of [Intervenor-Defendants'] participation in this case." Pls.' Mem. in Supp. of Stay, at 4 [CM/ECF No. 32.].

## LEGAL STANDARD

"A district court has inherent power to control the disposition of the causes on its docket in a manner which will promote economy of time and effort for itself, for counsel, and for litigants." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). As such, "[a] district court has discretionary power to stay proceedings." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir. 2005) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). In utilizing this discretion, however, the district court must weigh a number of factors, including any potential damage that may result from granting a stay, "the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX*, 300 F.2d at 268 (citing *Landis*, 299 U.S. at 254-55). The party seeking "a stay must make out a clear case of hardship or inequity in being required to go forward, if there is

even a fair possibility that the stay for which he prays will work damage to some one else." *Landis*, 299 U.S. at 255.

## DISCUSSION

On the facts of this case, the Court finds that the balance of factors weighs against continuing the stay. First, the Court finds Federal Defendants would suffer little to no inequity or hardship. As mentioned, the stay in two separate lawsuits, which, as here, challenge the Monument expansion, has been lifted and those cases are moving forward. Therefore, in both cases, *Am. Forest Res. Council v. United States of America*, 1:17-cv-00441-RJL (D.D.C. Dec. 1, 2017), and *Assoc. of O&C Ctys. v. Trump*, 1:17-cv-00280-RJL (D.D.C. Feb. 13, 2017) (collectively, the "District of Columbia Cases"), Federal Defendants are required to file their responsive pleadings by March 15, 2018, and dispositive motion briefing in both cases is set to finish on or before September 13, 2018.

The issue in all three cases is a legal one: whether Presidential Proclamation No. 9564, which expanded the Monument, violates the O&C Act and the Antiquities Act. Accordingly, far from suffering inequity or hardship if this case were to move forward, Federal Defendants would merely be required to defend against the same allegations as are being made in those two identical cases. Simply "being required to defend a suit, without more, does not constitute a clear case of hardship or inequity." *Lockyer*, 398 F.3d at 1112 (internal quotation and citation omitted). This is all the more true here where Federal Defendants are already required to defend the very issue being challenged in this lawsuit in two separate, ongoing cases.

In addition, the only meaningful discovery that could conceivably take place is Federal Defendants' lodging of an administrative record. But, if an administrative record is necessary in this case, Federal Defendants will also have to lodge an administrative record in both District of

Columbia Cases. Therefore, no additional discovery, beyond that required in the District of Columbia Cases, would be necessary were this case to move forward.

And, while Federal Defendants correctly note the risk that Presidential action could moot the issue Plaintiffs challenge, this risk is equally present in the District of Columbia cases. Accordingly, any Federal Defendant resources that may potentially be saved by continuing the stay in this case are greatly reduced given that the other two cases, involving the same record, are moving forward.

Next, the Court finds that a stay would harm Intervenor-Defendants in two ways. First, it would deprive them of the certainty of resolving "this matter on the merits." *Native Fish Soc'y v. Nat'l Marine Fisheries Serv.*, No. 3:12-cv-00431-HA, 2013 WL 12321321, at *2 (D. Or. Aug. 8, 2013).[2] And, second, it would put Intervenor-Defendants in the position of having to litigate this issue in separate, ongoing cases while waiting—for an unspecified and unknown amount of time—for this case to move forward. Such a scenario hardly promotes efficient allocation of Intervenor-Defendants' division of resources.

Nor would a continued stay promote judicial efficiency and economy. Plaintiffs and Federal Defendants stress that prudency dictates waiting "a little longer to see whether or how Presidential action might affect the course of this lawsuit." Murphy Decl. ¶ 6 [CM/ECF No. 33.]. As explained, however, the present stay was first issued on June 13, 2017, and has since been continued twice, in an effort to provide the President with the opportunity to review, consider, and act on the Secretary's recommendations, which "were transmitted to the President on August

---

[2]"Although an intervenor's entrance [into a lawsuit] does not in all respects guarantee it the right to do that which an original party could have done," *Harris v. Amoco Prod. Co.*, 768 F.2d 669, 675 (5th Cir. 1985), an intervening party, who, as Intervenor-Defendants do, intervenes as of right, by definition has "an interest relating to the property or transaction that is the subject of the action," Fed. R. Civ. P. 24 (a)(1), and thus has an interest, as do all parties as well as the public, in resolving cases on their merits. *See In re Phenylpropanolamine Prods. Liab. Litig.*, 460 F.3d 1216, 1252 (9th Cir. 2006) (holding that parties to litigation, as well as the public, have an interest in the disposition of cases expeditiously and on their merits).

24, 2017[.]" First Joint Status Report, at 2. Yet no Presidential action on the Monument has taken place, though the President acted on two other national monuments. *See* Intervenor-Defs.' Mem. in Opp'n to Stay, at 1. Neither is there any indication when the President will act and thus that there is an end in sight to Federal Defendants' and Plaintiffs' requested stay.

February 17, 2018, marks a year since Plaintiffs originally filed this action. As mentioned, there is no indication when the President might act on the Secretary's recommendations and, therefore, when the circumstances purportedly justifying the requested stay would cease to exist, allowing the Court and the parties to move forward in this case. The uncertainty necessitated by issuing a stay with an unknown end date is in direct contravention of the Court's well-recognized ability to manage the disposition of cases on its docket, as well as the public's interest in the expeditious resolution of litigation. *CMAX*, 300 F.2d at 268; *In re Phenylpropanolamine*, 460 F.3d at 1252.

The only factor that does weigh in favor of a stay is the potential hardship or inequity Plaintiffs might suffer were the case to move forward. As Plaintiffs correctly point out, because Presidential action has the potential to moot the executive action Plaintiffs challenge, were the stay to be lifted and the parties ordered to move forward, Plaintiffs, who are not parties to the District of Columbia Cases, risk spending resources only to later receive notice that the President has decided to rescind the Monument's expansion, thus mooting Plaintiffs' case.

But this potential inequity is lessened because any discovery necessary to resolve this case is borne not by Plaintiffs but by Federal Defendants and is presumably already being conducted for the District of Columbia cases. And, while Plaintiffs will incur the costs and expenses associated with dispositive motion briefing, the fact remains that, as it currently stands, the issue Plaintiffs challenge remains ripe for judicial review and the President could also choose

not to rescind the Monument's expansion. "In that scenario, it makes all the more sense to resolve the current dispute[] without delay," as is the case in the District of Columbia Cases. *Native Fish Soc'y*, 2013 WL 12321321, at *2.

Thus, while Plaintiffs *could* suffer some inequity or hardship by denying their stay request, this contingent hardship does not outweigh the harm that would befall Intervenor-Defendants by denying them the certainty of resolving this highly contentious issue on the merits and doing so in tandem with ongoing litigation currently taking place in the District of Columbia.[3] This harm is only reinforced by the uncertainty inevitably caused by the unclear and open-ended duration of the stay request and the effect such a request would have on the Court's ability to efficiency and economically manage and dispose of the cases on its docket. In sum, then, the balance of the factors weighs against continuing the stay in this matter, and the Court therefore denies Plaintiffs' and Federal Defendants' motion to continue the stay originally issued on June 13, 2017.

## ORDER

The Motion to Continue the Stay (#29) is DENIED. A scheduling conference is set for February 21, 2018, to address the remaining deadlines in this case.

IT IS SO ORDERED and DATED this 14 day of February, 2018.

MARK D. CLARKE
United States Magistrate Judge

---

[3] Litigating and resolving the cases as close in temporal proximity as possible would seem to help serve the interest of providing judicial certainty on this issue.